IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

NICHOLAS MARTIN,                        )
                                        )
          Plaintiff,                    )
                                        )
     v.                                 )
                                        )    No. 10 C 140
PPP, INC. and FIDELITY                  )
COMMUNICATIONS CORPORATION,             )
                                        )
          Defendants.                   )
                                        )

<u>MEMORANDUM OPINION AND ORDER</u>

Nicholas Martin ("Martin") has brought this putative class
action against defendants PPP, Inc. ("PPP") and Fidelity
Communications Corporation ("Fidelity") for alleged violations of
the Telephone Consumer Protection Act of 1991 ("TCPA," "the Act"),
47 U.S.C. § 227.[1]  Martin's suit claims that the defendants were

_____

     [1] "In relevant part . . . the TCPA prohibits, with limited
exceptions, any call using an automatic telephone dialing system or
an artificial or prerecorded message to any wireless telephone
number." *In the Matter of Rules and Regulations Implementing the
Telephone Consumer Protection Act of 1991*, 19 F.C.C.R. 19215, 19216
(Sept. 21, 2004).  The specific section of the Act under which
Martin brings his suit provides:

     A person or entity may, if otherwise permitted by the
     laws or rules of court of a State, bring in an
     appropriate court of that State --

     (A) an action based on a violation of this subsection or
     the regulations prescribed under this subsection to
     enjoin such violation,

     (B) an action to recover for actual monetary loss from
     such a violation, or to receive $500 in damages for each
     such violation, whichever is greater, or

responsible for using an automatic telephone dialing system ("ATDS") to make a call featuring a prerecorded promotional message for Papa John's Pizza to his cell phone in July 2009. Count I of the complaint seeks statutory damages of $500 for each violation of the Act; Count II seeks to treble the damages for each violation on the ground that the defendants' violation of the Act was wilful; and Count III seeks a permanent injunction prohibiting the defendants from making future calls to cell phones using ATDSs or prerecorded voice messages. Martin's complaint purports to bring the suit on behalf of all individuals within certain area codes in the Chicago region who received such calls on their cell phones from either or both of the defendants without consent during the past four years.

Each of the defendants has filed a motion to dismiss for lack of subject matter jurisdiction. For the reasons discussed below, I grant Fidelity's motion and deny PPP's motion.

**I.**

Martin filed the complaint in this suit on January 11, 2010.

---

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

On February 26, 2010 -- before Martin had filed a motion for class certification -- Fidelity presented Martin with a settlement offer that was intended to provide him with all of the relief he sought in his suit.  Specifically, in a letter sent to Martin's counsel, Fidelity offered Martin "$1,500 for each and every pre-recorded call which [Fidelity] or PPP, Inc. sent to any cell phone" owned or paid for by Martin.  Fidelity's Mem. Motion to Dismiss, Ex. 1 at 3. The offer also agreed to pay any costs that Martin would recover if he were to prevail at trial.  Further, Fidelity agreed "to the entry of a stipulated injunction against it as requested in Count III of the Complaint," prohibiting Fidelity "from placing pre-recorded calls to cellular phones in violation of the TCPA." *Id.* at 4.  Finally, Fidelity's offer included a catchall clause that agreed to provide "Plaintiff with any other relief which is determined by the Court to be necessary to fully satisfy all of the individual claims of Plaintiff in the Lawsuit or the similar claims of any other person to whom this offer is extended." *Id.*

Martin rejected the offer on March 11, 2010 and filed a motion for class certification the next day.  After receiving Martin's rejection of its offer, Fidelity filed the instant motion to dismiss, arguing that by offering Martin all of the relief sought in his complaint, his suit had been rendered moot.  After Fidelity's motion to dismiss had been fully briefed, PPP filed a separate motion to dismiss.  PPP reiterates Fidelity's arguments

that Fidelity's settlement offer provided Martin with complete relief. In addition, PPP argues that Fidelity alone was responsible for the offending calls, and that Martin is not entitled to injunctive relief against PPP. Nevertheless, PPP agrees in its motion to dismiss to abide by an injunction that would forbid it from making any further calls to Martin's cell phone.

## II.

"Article III of the United States Constitution confers on the federal courts jurisdiction over cases and controversies." *Holstein v. City of Chicago*, 29 F.3d 1145, 1147 (7th Cir. 1994). The Seventh Circuit has explained that "[o]nce the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake." *Rand v. Monsanto Co.*, 926 F.2d 596, 598 (7th Cir. 1991). In the class action context, "an offer's effect depends on its timing: offers received before a motion for class certification is filed moot the case, but offers received after the motion has been filed do not." *White v. Humana Health Plan, Inc.*, No. 06 C 5546, 2007 WL 1297130, at *6 (N.D. Ill. May 2, 2007). If a plaintiff files a class certification motion during the ten-day period following an offer of judgment, the case is not mooted. *See, e.g., Western Ry. Devices Corp. v. Lusida Rubber Prods., Inc.*,

No. 06 C 0052, 2006 WL 1697119, at *2 (N.D. Ill. June 13, 2006)
("The Seventh Circuit has not addressed the question of the effect
of a motion to certify a class filed during the pendency of a Rule
68 offer of judgment. However, a number of judges in this district
have addressed this issue and uniformly concluded that the filing
of a motion to certify a class during the ten day period after a
defendant makes an offer of judgment prevents mootness of a
plaintiff's claim.").

Martin claims that Fidelity's offer does not moot his action
because the offer does not provide him with complete relief. In
particular, he objects to the offer because: (1) it is not an offer
of judgment pursuant to Rule 68 of the Federal Rules of Civil
Procedure; (2) it fails to provide reimbursement of $1,500 *per
violation* of the TCPA and instead offers only $1,500 *per call*; (3)
it agrees only to discontinue making calls using prerecorded
messages, despite the fact that Martin's complaint additionally
requests an injunction against the use of ATDSs; and (4) the offer
agrees to the requested injunctive relief only with respect to
Fidelity and contains no provision to prevent PPP from making
future calls in violation of the TCPA.

## 1. Federal Rule 68

Martin first objects to Fidelity's settlement offer on the
ground that it does not constitute an offer of judgment pursuant to
Rule 68. This contention lacks any foundation in the relevant case

-5-

law.  Martin not only fails to cite any case holding that a settlement offer can moot an action only when made pursuant to Rule 68; he is also unable to distinguish or rebut the cases that Fidelity cites to the contrary.  For example, Martin himself acknowledges that the settlement offer at issue in *Holstein* rendered the plaintiff's claims moot, despite the fact that the offer was not made pursuant to Rule 68.  *See* Pl.'s Resp. at 6. *Holstein* involved an action brought against the City of Chicago by two separate plaintiffs whose cars had been towed for parking violations.  As relevant here, the first plaintiff, Grove, sought a declaratory judgment that certain of the City's administrative procedures, and certain provisions of the City's municipal code, were unconstitutional.  Three months after Grove's car was towed, the City determined that the towing had been improper.  The City informed Grove of its decision and offered to refund the costs he had incurred in retrieving his vehicle.  Grove refused to accept reimbursement and insisted on proceeding with his suit.  The Seventh Circuit held that since the City had offered to fully satisfy Grove's claims, his suit was moot.

It is true that neither *Holstein*, nor any other Seventh Circuit case, addresses the Rule 68 issue explicitly. Nevertheless, dicta in the Seventh Circuit's cases strongly support the conclusion that a suit may be mooted by an offer of complete relief, irrespective of Rule 68.  In *Greisz v. Household Bank*, 176

F.3d 1012 (7th Cir. 1999), for example, the plaintiff brought claims against a bank and other defendants under the Truth in Lending Act and under Illinois law. The plaintiff sought class certification, but the district court denied the motion. The district court later granted summary judgment to the defendants on all but a portion of one of Greisz's claims. The bank then presented Greisz with an offer of $1,200 (plus reasonable costs and attorney's fees) under Rule 68. Greisz rejected the offer, and the court dismissed her remaining claim as moot, concluding that the offer of judgment exceeded the maximum amount of money that she could have obtained by going to trial.

On appeal, the Seventh Circuit upheld the dismissal of Greisz's claim. Writing for the court, Judge Posner explained:

> By offering her $1,200 plus reasonable costs and attorney's fees, the bank thus was offering her more than her claim was worth to her in a pecuniary sense. Such an offer, by giving the plaintiff the equivalent of a default judgment (here it was actually larger by $200 than a default judgment would have been), eliminates a legal dispute upon which federal jurisdiction can be based. You cannot persist in suing after you've won.

*Id.* at 1015 (citations omitted).

Judge Posner also went on to explain the importance of the offer's timing:

> We would have a different case if the bank had tried to buy off Greisz with a settlement offer greater than her claim before the judge decided whether to certify the class. For then [the plaintiff's attorney] would have had to find another named plaintiff to keep the suit alive, and if the defendants had bought off that plaintiff as well and had repeated this tactic as [the

-7-

plaintiff's attorney] scrounged for a class representative, they might have hamstrung the suit. The tactic is precluded by the fact that before the class is certified, which is to say at a time when there are many potential party plaintiffs to the suit, an offer to one is not an offer of the *entire* relief sought by the suit, *unless the offer comes before class certification is sought*, and so before the existence of other potential plaintiffs has been announced.

*Id.* (second emphasis added). The salient point is not whether the offer was made under Rule 68, but that it was made prior to the filing of a class certification motion.

Finally, Martin acknowledges that *Baker v. N.P.F. Liquors, Inc.*, No. 08 C 3494, slip op. (N.D. Ill. Dec. 30, 2008), the one case in this District (and one of the few cases anywhere)[2] to have addressed the issue, squarely rejected the contention that a complete offer of relief will moot a plaintiff's suit only if it is made pursuant to Rule 68. The plaintiff in *Baker* sued N.P.F. Liquors ("NPF") for alleged violations of the Fair and Accurate

---

[2] Aside from *Baker*, only a handful of cases raise the Rule 68 issue. *See, e.g.*, *Samsung Electronics Co., Ltd. v. Rambus, Inc.*, 398 F. Supp. 2d 470, 486 (E.D. Va. 2005) ("[Defendant's] offer to pay reasonable attorney's fees was not an offer of judgment. It was a mere offer of settlement, which [plaintiff] was free to accept or reject without further consequence."); *Matheson v. Glazier Group, Inc.*, No. 09 Civ. 4214(DAB), 2010 WL 1929882, at *1 (S.D.N.Y. May 11, 2010) (defendant's motion to dismiss "would be futile because cases from *this jurisdiction* dismissing Complaints on the basis of Defendants' offers of 'full relief' consistently cite to and rely upon the language of Rule 68. Yet here the parties are in agreement that the Defendants' offer was not made pursuant to, or in compliance with the requirements of, Rule 68"); *cf. Murphy v. Equifax Check Services, Inc.*, 35 F. Supp. 2d 200, 203 (D. Conn. 1999) (holding that settlement offer mooted plaintiff's suit without indicating whether the offer was made under Rule 68).

Credit Transactions Act ("FACTA") by printing a credit card receipt that displayed his credit card number and its expiration date. *Id.* at 1. About one month after the suit was filed, NPF sent a letter to Baker's counsel offering to settle the case for $10,000. The letter also stated that the offer would be withdrawn if Baker did not accept it within one week. That same day, NPF served Baker's counsel with an offer of judgment pursuant to Rule 68 for $1,001.00, plus reasonable costs and attorney's fees. Prior to the expiration of either the informal offer or the Rule 68 offer, Baker moved to certify a class. NPF moved to dismiss, arguing that the settlement and Rule 68 offers had rendered Baker's suit moot. In a September 17, 2008 minute order, the court denied the motion, emphasizing that it was "unwilling to permit defendants to derail class actions by buying off named plaintiffs for nominal amounts early in a case." *Baker*, slip op. at 3.

NPF later moved to reconsider, arguing that the settlement letter, considered independently of the Rule 68 offer, had rendered Baker's suit moot. The court granted the motion and held that the informal settlement offer had indeed mooted the litigation. In explaining its decision, the court stated that "[r]ead together, *Greisz* and *Holstein* strongly indicate that an offer of complete relief moots the plaintiff's case if it is made before the plaintiff moves to certify a class." *Id.* at 7-8. The court also addressed its earlier concern that such a rule would allow

defendants to "derail" class action litigation by "picking off" plaintiffs before they ever had an opportunity to initiate a class action. "From a policy standpoint," the court opined, "it makes little difference what form defendant's offer takes: the potential to undermine class actions is the same." *Id.* at 10.

It is this last issue of "picking off" plaintiffs that forms almost the entire basis of Martin's argument. He does not claim that a non-Rule 68 is less enforceable than a Rule 68 offer; nor does he claim that a non-Rule 68 offer would provide him with less relief than he could obtain if the case went to judgment.[3] Rather, he claims that defendants should not be allowed to pick off plaintiffs in putative class actions, and he maintains that this can be prevented by permitting settlement offers to moot cases only where they are made under Rule 68. A Rule 68 offer forestalls picking off, Martin argues, because Rule 68 offers are irrevocable for a period of ten days, *see, e.g.*, *Webb v. James*, 147 F.3d 617, 621 (7th Cir. 1998), and if a plaintiff files a class

_____

[3] In passing, Martin claims that the offer "does not provide for any sort of judgment or finding as to liability, which was specifically requested." Pl.'s Resp. at 5. It is well-settled, however, that even offers under Rule 68 are not required to contain admissions of liability. *See, e.g.*, *Staples v. Wickesberg*, 122 F.R.D. 541, 544 (E.D. Wis. 1988) (Evans, J.) (rejecting as "utterly without merit" the contention that offer was invalid because it did not explicitly agree to liability); *Mite v. Falstaff Brewing Corp.*, 106 F.R.D. 434, 435 (N.D. Ill. 1985) (Shadur, J.) (offer not defective under Rule 68 for including a clause providing, "This amount to be in total settlement of this action with no admission of liability and said judgment herein to have no effect whatsoever except in settlement of this case").

certification motion during that ten-day period, the case is not
mooted, *see, e.g.*, *Western Ry. Devices Corp. v. Lusida Rubber
Prods., Inc.*, No. 06 C 0052, 2006 WL 1697119, at *2 (N.D. Ill. June
13, 2006).

Once again, Martin cites no case authority from this Circuit
in support of his position.  Nor does he address the decisions that
militate against his position.  In *Greisz*, for example, the court
specifically contemplated the possibility of picking off plaintiffs
prior to class certification.  Judge Posner stated that this
"tactic is precluded by the fact that before the class is certified
. . . an offer to one is not an offer of the entire relief sought
by the suit, . . . unless the offer comes before the class
certification is sought."  176 F.3d at 1015.  Similarly, in *White
v. Humana Health Plan, Inc.*, No. 06 C 5546, 2007 WL 1297130 (N.D.
Ill. May 2, 2007), Judge Leinenweber remarked:

> Plaintiffs' argument makes some logical sense. The rule,
> as it stands presently, does permit a defendant to "pick
> off" plaintiffs one by one, if offers are made before
> motions for class certification are filed.  This could
> cause some waste of judicial resources if the same class
> action suit was brought repeatedly with different
> plaintiffs, only to be mooted time and time again.  This
> can be avoided . . . by filing a motion for class
> certification immediately.  Plaintiffs correctly point
> out that the Third Circuit has ruled differently, holding
> that once a class certification motion was filed, it
> would relate back to the complaint under the relation
> back doctrine.  What Plaintiffs ignore is that the
> Seventh Circuit has not so held and has, in fact,
> espoused a conflicting rule.

*Id.* at *7 (citations omitted); *see also Ptasinska v. U.S. Dept. of*

*State*, No. 07 C 3795,2008 WL 294907, at *3 (N.D. Ill., July 31, 2008) (Fed. R. Civ. P. 23 permits defendants to pick off plaintiffs one by one, so long as settlement offers are made prior to filing of class certification motion); *Wiskur v. Short Term Loans, LLC*, 94 F. Supp. 2d 937, 939 (N.D. Ill. 2000) ("An offer of settlement (or judgment) greater than the named plaintiff's claim that comes before a motion for class certification is the equivalent of a default judgment against the defendant, and eliminates the legal dispute upon which federal jurisdiction can be based.  Therefore, because defendants' Rule 68 offer on Wiskur's TILA claim came before a motion for class certification was sought, and was for an amount greater than Wiskur could have received had she gone to judgment, the TILA claim was moot once the offer was made.").

In short, Martin has failed to convincingly argue that Fidelity's offer inadequate simply because it was not made under Rule 68.

### 2.    Reimbursement Per Violation vs. Per Call

Martin next objects that Fidelity's offer is deficient because it provides compensation strictly based on the single call that he received in violation of the TCPA.  According to Martin, this is unsatisfactory because the call violated § 227(b)(3) in two distinct ways -- by using a prerecorded message and by using an ATDS.  Martin claims that he is entitled to compensation for each violation.  I disagree.

Although the Seventh Circuit has yet to address the question whether compensation under the TCPA is to be calculated on a per-call or per-violation basis, the Sixth Circuit's decision in *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623 (6th Cir. 2009), offers guidance. The plaintiff in *Charvat* sued GVN for violating TCPA § 227(c)(5). While § 227(b)(3) (on which Martin relies) places restrictions on the use of automated telephone equipment, § 227(c)(5) is designed to protect consumers' privacy rights. The section provides:

> A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State--
>
> (A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater, or
>
> (C) both such actions.

47 U.S.C. § 227(c)(5). Among other things, the regulations associated with § 227(c) require telemarketers to maintain do-not-call-lists and require individuals calling on behalf of telemarketers to provide their name, the name of their employer, and a telephone number at which the telemarketer may be reached. *See* 47 C.F.R. § 64.1200(d).

Charvat argued that each of the defendant's calls

simultaneously violated several of these regulations and that he should be compensated for each violation, not merely each call. The Sixth Circuit rejected Charvat's position. The court based its interpretation on § 227(c)(5)'s text. Specifically, the court opined that subsections (A) and (B) represented "two distinct prongs of the statute, one governing injunctive relief and the other governing money damages," and that "[f]or good reason, Congress may have intended to grant courts the power to enjoin each individual violation of each component of the regulations while at the same time allowing statutory damages to be awarded only once per call." *Charvat*, 561 F.3d at 631-32. Consequently, the court held that "in interpreting the damages provision, we properly look back to any relevant introductory language rather than language in a separate subsection governing the entirely different avenue of injunctive relief," and observed that "[w]hen we turn to the introductory statutory language, the first stand-alone noun we encounter, looking back from 'each such violation,' is 'call,' and indeed a specific type of call, namely a 'telephone call . . . in violation of the regulations.'" *Id.* at 632. Thus, the court concluded, "'each such violation' cannot refer to the phrase 'in violation of the regulations,' because this phrase is not a noun but a prepositional phrase modifying the noun 'call.'" *Id.* As a result, "the term 'each such violation' must refer to 'telephone call . . . in violation of the regulations,' and damages are

awardable on a per-call basis." *Id.*

As already noted, *Charvat* involved § 227(c)(5), not § 227(b)(3), and it is true that the language of the two sections differs in what might at first appear to be an important way: while § 227(c)(5) specifically uses the word "call," § 227(b)(3) does not. In the final analysis, this textual difference is of little import. As other courts have pointed out, § 227(b)(3)'s omission of the word "call" is attributable to the fact that the provision applies not only to automatically-dialed phone calls, but also to unsolicited fax transmissions. *See, e.g.*, *Burdge v. Association Health Care Management, Inc.*, No. 08-3282, 2009 WL 414595, at *3 (S.D. Ohio Apr. 9, 2009). In other words, the fact that § 227(b)(3) uses the term "violation" instead of "call" does not signal any intent to compensate plaintiffs for multiple violations in a single call; it simply betokens the statute's application to telephone calls as well as other modes of communication.

In all other respects, § 227(b)(3) and § 227(c)(5) are substantively and structurally identical: both contain three separate clauses, the first providing for injunctive relief, the second providing for damages, and a third allowing for both types of relief. *See, e.g.*, *Hamilton v. Voxeo Corp.*, Nos. 3:07-cv-404, 3:08-cv-279, 2009 WL 1868542, at *4 (S.D. Ohio June 25, 2009). Thus, the two sections are most sensibly to be construed similarly. As under § 227(c)(5), therefore, Martin is entitled to recover only

-15-

once for each call he received in violation of the § 227(b)(3). Martin alleges having received only a single call. He does not contend that he should be separately compensated for the call by each defendant. Fidelity offered to pay $1,500 -- the trebled amount sought in Count II of the complaint. *See* Compl. ¶ 7(a). This represents the largest sum Martin could recover if he were to prevail on his claim for money damages at trial. Hence, Fidelity's offer is not inadequate by virtue of the fact that it provides compensation on a per-call, as opposed to per-violation, basis.

Additionally, it is worth noting that even if Martin were entitled to recover on a per-violation basis, or if he were entitled to greater monetary compensation for any other reason, Fidelity's offer would remain adequate. Given Fidelity's catchall promise to provide Martin "with any other relief which is determined by the Court to be necessary to fully satisfy all of the individual claims" in his suit, Fidelity would have already agreed to payment of the doubled amount if Martin had been entitled to it.[4]

_____

[4] In a supplemental submission to the court, Martin argues that Fidelity's offer was too vague. "To form a valid contract," he argues, "an offer must have definite material terms or require definite terms in the acceptance so that all promises and performances to be rendered are reasonably certain. If the terms are not reasonably certain, the offer cannot be accepted." Pl.'s Motion to Supplement Comments of June 7, 2010, ¶ 4. He goes on to argue:

> The language in the settlement letter that Fidelity was offering, "any other relief which is determined by the

### 3.  Injunctive Relief

Finally, Martin argues that Fidelity's offer of injunctive relief is unsatisfactory.  His first objection -- that Fidelity agrees to refrain from making calls using prerecorded messages but not ATDSs -- is unconvincing.  Fidelity's offer agrees to an injunction "as requested in Count III of the Complaint."  Ex. 1 at 4.  Since Count III asks for an injunction "prohibiting defendants from violating the TCPA in the future through calling cellular

_____

> Court to be necessary to fully satisfy all of the individual claims of Plaintiff in the Lawsuit or the similar claims of any other person to whom this offer is extended" was not definite enough to be accepted. Plaintiff's counsel does not even know what this means.

*Id.* ¶ 5.

> I do not agree.  The Seventh Circuit's cases indicate that, so long as an offer provides for complete relief, it renders the plaintiff's suit moot.  In a sense, the plaintiff's actual acceptance of the offer is unimportant, since the case is moot once the offer has been made.  *See, e.g.*, *Wiskur v. Short Term Loans, LLC*, 94 F. Supp. 2d 937, 939 (N.D. Ill. 2000) (because defendants' Rule 68 offer on plaintiff's Truth in Lending Act claim was made before plaintiff filed for class certification, and because the offer was for an amount greater than plaintiff could have received if she had gone to judgment, the "claim was moot once the offer was made").  Here, somewhat paradoxically, Fidelity's blanket agreement to provide any additional necessary relief makes the offer at once more vague and more definite.  On one hand, the catchall provision does not specify what particular relief, if any, might be added to the offer; on the other hand, it is precisely by virtue of its open-ended character that the catchall provision ensures that Fidelity's offer will indeed provide Martin with complete relief. In this context, the offer's indefiniteness does not render it invalid.

phones using an automatic telephone dialing system and/or a prerecorded voice message," Compl. ¶ 34(a), Fidelity's offer impliedly agrees to these terms. And even if the offer neglected to promise no further use of ATDSs, the defect would be rectified by the offer's catchall provision.

Martin also argues that Fidelity's offer of injunctive relief fails because the offer is made only on its own behalf and does not apply to PPP. In response, Fidelity contends that this claim is "meritless," because "Fidelity can only offer injunctive relief with respect to itself." Fidelity Reply Br. at 5. But this only brings the difficulty into sharper relief: because Fidelity cannot offer injunctive relief on PPP's behalf, and because Martin's suit seeks injunctive relief against PPP as well as Fidelity, Fidelity's offer is incomplete as to PPP. Fidelity attempts to circumvent the problem by once again invoking the catchall clause, arguing that it "would cure any inadequacy in the scope of the injunctive relief offered." *Id.* But that is not so: the catchall clause provides only for such additional relief as *Fidelity* can provide. Even if Fidelity wanted to, it would be powerless to make a commitment on PPP's behalf to act or refrain from acting in a particular way in the future.

Since Fidelity's offer is complete in all respects except the injunctive relief requested of PPP, it would seem to follow that Fidelity's settlement offer renders Martin's suit moot, except

-18-

insofar as he asserts a claim for injunctive relief against PPP. However, a number of additional questions arise as to whether Martin's claim remains viable in this truncated form. A first set of concerns is raised by PPP. In its motion to dismiss, PPP argues that it "did not make the alleged telephone call to Plaintiff's cellular phone, but exclusively utilized the telemarketing services of Fidelity to make promotional telephone calls to certain of its existing customers." PPP Mem. at 5.[5] As a result, PPP claims, "PPP, INC.'s liability under the TCPA, if any, is vicarious and arises solely through Fidelity's actions." *Id.* According to PPP, this means that "an injunction against Fidelity (requiring it to refrain from making any future calls to Plaintiff's cellular phone on behalf of PPP, INC.) necessarily eliminates any calls made on behalf of PPP, INC." *Id.* "Indeed," PPP maintains, "if Fidelity made the alleged call at issue, it did so only on behalf of PPP, INC. and, therefore, the proposed injunction clearly was intended to cease all future calls in violation of the TCPA by and half of PPP, INC." *Id.* This argument does not follow. The fact that PPP

---

[5] Along with its motion to dismiss, PPP has submitted an affidavit of its Vice President, Muge Parmaksiz, in support of these claims. Since PPP's motion is brought under Rule 12(b)(1), the affidavit may properly be taken into account. *See, e.g.*, *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008) ("In determining whether to dismiss for lack of jurisdiction, the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.") (quotation marks and brackets omitted).

made no calls of its own does not mean that Martin is not entitled to injunctive relief against PPP. The statute nowhere suggests that injunctive relief is unavailable against parties whose liability for the alleged violation is vicarious.

In its motion to dismiss, PPP also states that it has "agreed, and continues to agree, to refrain from initiating any future calls to Plaintiff's cellular phone without prior written consent." PPP Mem. at 5. PPP therefore argues that, even if Martin were entitled to injunctive relief against it, his suit is moot because he still will have been given all of the relief he seeks. But PPP's agreement to make no further calls to Martin falls far short of an agreement to an *injunction* barring such calls, which is the specific relief Martin requests. Moreover, PPP's agreement not to "initiate" further calls is not unambiguous. I also note that PPP agrees only to refrain from making further calls to *Martin's* cell phone without prior written consent. PPP Mem. at 5 (emphasis added). PPP has not agreed to stop making prohibited calls to others (or to stop enlisting agents such as Fidelity to do so on its behalf). As a result, Martin's suit against PPP remains viable insofar as it seeks injunctive relief.

Nevertheless, there are some additional difficulties with allowing Martin to proceed solely on a claim for injunctive relief against PPP. It is well-settled, for example, that "when seeking injunctive and declaratory relief, a plaintiff must establish that

he is in immediate danger of sustaining some direct injury," and that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Feit v. Ward*, 886 F.2d 848, 857 (7th Cir. 1989) (citations and quotation marks omitted); *cf. Alliance to End Repression v. City of Chicago*, 820 F.2d 873, 877 (7th Cir. 1987) ("[D]iscontinuation of a practice usually does not make a case moot, but it will end the 'case or controversy' when recurrence of the dispute among these parties is very unlikely."). Moreover, even assuming that Martin could proceed on the basis of this single claim, it is unclear whether, since he no longer has a claim for monetary relief, he could adequately represent his proposed class. *See, e.g.*, *Transit Exp., Inc. v. Ettinger*, 246 F.3d 1018, 1023 (7th Cir. 2001). These issues have not been discussed by the parties thus far. PPP is directed to address these and other pertinent issues in response to Martin's pending motion for class certification.

## Conclusion

For the reasons discussed above, Fidelity's motion to dismiss is granted and PPP's motion to dismiss is denied. Pursuant to the terms of Fidelity's settlement offer, Martin is entitled to $1,500.00 and to compensation for all costs to which he would have

been entitled if he had prevailed at trial.[6]  Furthermore, an injunction will be entered prohibiting Fidelity from placing future calls to cellular phones using an ATDS and/or prerecorded voice messages in violation of the TCPA.

ENTER ORDER:

_Elaine E. Bucklo_
Elaine E. Bucklo
United States District Judge


Dated: June 25, 2010

---

[6] I am mindful of Seventh Circuit cases holding that where a plaintiff turns down an offer that completely satisfies his claims, he is no longer entitled to any of the promised relief. *See, e.g.,* *Rand v. Monsanto*, Co., 926 F.2d 596, 598 (7th Cir. 1991) ("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake."); *Baker v. N.P.F. Liquors, Inc.*, No. 08 C 3494, 2009 WL 212114, at *1 (N.D. Ill. Jan. 28, 2009) (citing cases).  It is unclear whether this line of cases is applicable here, given the unique circumstances of the case (e.g., where a defendant's settlement offer moots the plaintiff's claims against it, but only partially moots the claims against a co-defendant).  Nor do either Fidelity or PPP dispute Martin's entitlement to the relief promised in Fidelity's settlement offer. *Cf. Susman v. Lincoln American Corp.*, 557 F. Supp. 299, 300 (N.D. Ill. 1983) (Shadur, J.) (making mootness of plaintiff's suit contingent on defendant's delivery of relief promised in settlement offer).